IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BOLESLAW EWASKIEWICZ and
SANDRA EWASKIEWICZ, husband and wife                    PLAINTIFFS

VS.                    Civil No. 05-6005

DEL MESA FARMS                                           DEFENDANT

## **MEMORANDUM OPINION AND ORDER**

On this 22nd day of December 2005, there comes on for consideration Defendant's Motion for Summary Judgment (Doc. #10-12, 17), Plaintiff's Response (Docs. #13-15) and Defendant's Reply (Doc. #16). For reasons stated herein, the Court finds that Defendant's Motion for Summary Judgment should be and hereby is GRANTED and Counts 1 and 2 of Plaintiffs' Complaint are DISMISSED. Plaintiffs' breach of contract claim remains set for jury trial the week of January 23, 2006.

**I.   Background**

Plaintiff presents state law claims of intentional interference with contractual relations or business expectancies, promissory estoppel and breach of contract. Plaintiff seeks compensatory and exemplary damages as well as attorney's fees and costs. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiffs were pullet growers who owned and operated a farm in Pike County, Arkansas. Beginning in 1994, Defendant entered

1

into a series of pullet growing contracts with Plaintiffs. Each contract covered the housing of one flock of pullets to be placed on Plaintiffs' farm until they reached maturity. Such contracts are referred to as flock-to-flock and provided they could be terminated without cause by either Plaintiffs or Defendant. By correspondence dated March 8, 2002, Defendant advised Plaintiffs that it would not be placing anymore pullets in Plaintiffs' farm. (Doc. 15, Ex. 3). However, on April 1, 2002, Defendant advised Farm Credit[1] that it intended to place pullets on Plaintiffs' farm provided that the farm was updated to Defendant's standards. (Doc. 15, Ex. 4). Defendant provided a list of ten improvements to be made in order to meet Defendant's standards. Plaintiffs made the improvements and continued to produce pullets for Defendant until advised in April 2004, that the next flock would be the last. The contract entered into by Plaintiffs and Defendant on April 28, 2004 again provided that either party could terminate the agreement without cause by providing written notice at least two weeks prior to the pick-up date for the flock.

On August 24, 2004, Plaintiffs executed a real estate offer and acceptance contract with Clifford W. and JoDee Turner where the Turners agreed to purchase Plaintiffs' farm for $340,000 with Plaintiffs carrying a second mortgage for 40 percent of the

---

[1] Farm Credit Services was Plaintiffs' lender, and the Turners attempted to obtain financing from Farm Credit when they were considering purchasing Plaintiffs' farm.

2

purchase price. The Turners applied for financing with Farm Credit who requested a letter of intent from Defendant for the placement of pullets on the farm with the Turners. In correspondence dated August 2, 2004, Defendant advised Farm Credit of its intent to place pullets on Plaintiffs' farm if purchased by the Turners provided that another list of requested improvements be completed prior to placement of the pullets. (Doc. 15, Ex. 5). On October 4, 2004, Defendant advised Plaintiffs it would not be placing any pullets on Plaintiffs' farm. (Doc. 15, Ex. 6). Defendant later withdrew the letter of intent, and the Turners did not purchase the farm.

**II. Discussion**

**A. Standard of Review**

In reviewing a summary judgment motion, the court must view the facts and inferences from the facts in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and to establish that it is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986); *Nat'l. Bank of Commerce of El Dorado, Arkansas v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). Once the moving party has met this burden, the non-moving party may no longer rest on the allegations in its pleadings, but must set forth specific facts by

3

affidavit and other evidence, showing that a genuine issue of material fact exists. *See* FED.R.CIV.P. 56(e). Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, rather, he must convince the court that there is sufficient evidence to support a jury verdict in his favor. *See National Bank of Commerce*, 165 F.3d at 607. In order to withstand Defendant's motion for summary judgment, Plaintiff must substantiate his allegations with "sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992).

**B.  Intentional Interference Claim**

In order to prevail on their claim of intentional interference, Plaintiffs must prove: (1) they had a valid contractual relationship or business expectancy; (2) Defendant had knowledge of the relationship or expectancy; (3) intentional and improper interference by Defendant inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to Plaintiffs. *See Mason v. Wal-Mart Stores, Inc.*, 969 S.W.2d 160 (Ark. 1998). Improper means, for purposes of intentional interference with contractual relations or business expectancy, are those means which are independently wrongful, notwithstanding injury caused by the interference. *W. Prosser, Law*

4

*of Torts*, § 129 at 936-37 (4th ed. 1971). Plaintiffs must show that Defendant's conduct prevented a third person from entering into or continuing a contractual relationship with them. *McNeill v. Security Benefit Life Insurance Company*, 28 F.3d 891, 894 (8th Cir. 1994). Moreover, the interference must be undertaken to obtain a pecuniary or competitive benefit that formerly belonged to Plaintiffs. *Id.*

Plaintiffs claim they were unable to sell their poultry farm as the result of intentional and improper interference by Defendant. Specifically, Plaintiffs claim that because Defendant refused to contract with the prospective buyers of their poultry farm, Plaintiffs were unable to sell the farm. The issue is whether Plaintiffs have demonstrated that a genuine issue of material fact exists if Defendant induced or caused the Turners to breach their real estate agreement with Plaintiffs by using intentional and improper interference in order to obtain a pecuniary or competitive benefit that formerly belonged to Plaintiffs.

In order to determine whether Defendant's actions were improper, we consider the following factors: (1) the nature of Defendant's conduct, (2) Defendant's motive, (3) Plaintiffs' interests with which Defendant's conduct interferes, (4) the interests sought to be advanced by Defendant, (5) the social interests in protecting the freedom of action of Defendant and the

5

contractual interests of Plaintiffs, (6) the proximity or remoteness of Defendant's conduct to the interference and (7) the relations between Plaintiffs and Defendant. *Mason v. Wal-Mart Stores, Inc.*, 333 Ark. at 14, 969 S.W.2d at 165 (Ark. 1998).

Defendant claims that its decision to withdraw its letter of intent was a business decision based upon its lack of need for pullets at the time and that the Turners had not as yet made any investment to improve the farm. (Fuller depo., p. 39). Mr. Ewaskiewicz testified that he did not know why Defendant elected not to place pullets with the Turners and never talked to anyone from Del Mesa about the decision or about the potential sale of the farm to the Turners. (Doc. 15, Ex. 8, pp. 10-11). Liability under a tortious interference theory cannot be predicated upon speculation, conjecture, or guesswork, and no fact essential to submissibility can be inferred absent a substantial evidentiary basis. *Wash Solutions, Inc. v. PDQ Manufacturing, Inc.*, 395 F.3d 888 (8th Cir. 2005)(citation omitted).

Without question, Plaintiffs had an interest in finding a purchaser for their farm. Similarly, Defendant had an interest in choosing on which farms and with which growers it placed its flocks. While there is an interest in preventing third parties from intentionally and improperly interfering with contractual relationships, there is likewise an interest in having the freedom to choose with whom to contract. There is no evidence that

6

AO72A
(Rev. 8/82)

Defendant's decision to withdraw its Letter of Intent was improper or intended to induce the Turners to refuse to buy Plaintiffs' farm. Wes Turner testified that despite the alleged statements by Defendant's employee Carrol Loy that Mr. Turner interpreted as attempts to dissuade him from buying Plaintiffs' farm, he still intended to purchase the farm and executed the offer and acceptance after his comments. (Doc. 15, Ex. 11, p. 8). Mr. Turner stated that Carrol Loy attempted to get him to purchase another farm or start a new farm in lieu of buying Plaintiffs' farm but that he continued to pursue the purchase of Plaintiffs' farm despite the fact that he could not borrow all of the money that he needed. *Id*. at 10-11.

While the Court is concerned that Defendant issued the letter of intent and later withdrew it, this cannot be said to rise to the level of tortious interference with the relationship between Plaintiffs and the Turners. *See Quintana v. First Interstate Bank of Albuquerque*, 737 P.2d 896 (N.M. App. 1987)(mere refusal to deal with a party cannot support a claim for tortious interference with contractual relations); In *Vermont National Bank v. Dowrick*, 481 A.2d 396 (Vermont 1984), the court found that refusing to loan a prospective buyer money so a seller can escape foreclosure is not tortious interference with a business expectancy where the lender is under no obligation to make the loan. In reaching this conclusion, the court noted:

7

> The rationale for this rule rests upon fundamental assumptions in free business enterprise. Each business enterprise must be free to select its business relations in its own interest.

*Id*. at 400-01. One who has an existing economic interest in another's business affairs is privileged to interfere with a business expectancy to protect his own economic interest and is not liable for such interference if his action was one which he had a definite legal right to take without any qualification. *Central Bank of Lake of the Ozarks v. Shackleford*, 896 S.W.2d 948 (Mo. Ct. App. 1995)(citation omitted). Protecting one's economic interest constitutes justification for interference with a business expectancy unless one employs improper means to protect that interest. *Id*. (citation omitted). The Court can only conclude that the decision to withdraw the letter of intent from the Turners was a business decision Defendant was entitled to make to protect its own interests.

After considering all relevant factors, the Court finds no intentional or improper interference on the part of Defendant. Plaintiffs have failed to demonstrate the existence of a genuine issue of fact. Specifically, they have failed to show any intentional and improper actions by Defendant directed at Plaintiffs' relationship with the Turners. Plaintiffs' intentional interference claim, therefore, cannot withstand summary judgment.

AO72A
(Rev. 8/82)

[2]

## C.     Promissory Estoppel Claim

Plaintiffs contend that they made improvements to their facilities based upon the defendant's representations and promises that it would continue to supply them with contracts and poultry. It is clear that Plaintiffs' contract with Defendant provided that either party could terminate the contract without cause. Additionally, Mr. Ewaskiewicz testified that Defendant made no representations to him that would alter the flock-to-flock terms pursuant to the contract.  Plaintiffs point to the letter from Defendant to Mr. Shane Meador at Farm Credit Services dated April 1, 2002, which stated Defendant intended to place pullets on Plaintiffs' farm based upon performance provided certain improvements were performed.  However, the letter also stated that the contract would remain on the flock-to-flock basis and could be terminated with or without cause by either party. Plaintiffs were aware of this when they made the improvements to the farm.  Mr. Ewaskiewicz testified that he improved the farm after contracting with Defendant by adding two chicken houses but that he understood that the contracts were flock-to-flock and that the contract did not require Defendant to provide him with another flock despite the

---

[2]     In its Motion, Defendant contends its decision to withdraw its letter of intent was privileged. However, the Court does not reach this issue as it finds that Plaintiff failed to establish a prima facie case of their intentional interference claim.

improvements. (Doc. 11, Ex. 4, p. 7). Plaintiffs have provided no evidence of any promise or representation by Defendant to continue to provide Plaintiffs with pullets on anything other than on a flock-to-flock basis. Accordingly, Plaintiffs claim they were damaged based upon a promise by Defendant to continue providing pullets to them is without merit and must be dismissed.

### D.  Breach of Contract Claim

Defendant's summary judgment motion did not address Plaintiffs' claim for breach of contract having to do with Plaintiffs' allegation that they did not receive proper payment from Defendant pursuant to the contract. In a supplemental brief filed on December 2, 2005, Defendant indicated that the allegations surrounding the breach of contract claim had been resolved. Plaintiffs have not responded to Defendant's supplemental brief, but the breach of contract claim has not been resolved and remains set for jury trial the week of January 23, 2006.

### III.  Order

For the reasons stated above, the Court finds that Defendant's Motion for Summary Judgment should be and hereby is GRANTED. Accordingly, Counts 1 and 2 of Plaintiff's Complaint should be and hereby are DISMISSED, and the breach of contract claim remains set for jury trial the week of January 23, 2006. All parties are to bear their own fees and costs.

AO72A
(Rev. 8/82)

IT IS SO ORDERED.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge

AO72A
(Rev. 8/82)